# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

FADI H.,[1]
(A Number: 249-427-676)

Petitioner,

v.

ORESTES CRUZ, et al.,

Respondents.

Case No. 1:26-cv-02118-KES-EGC (HC)

**FINDINGS AND RECOMMENDATIONS THAT PETITIONER'S PETITION BE GRANTED**

(Doc. 1)

TEN-DAY DEADLINE

Fadi H. is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). For the foregoing reasons, the undersigned will recommend that the petition be granted and Petitioner be released immediately.

### I. BACKGROUND

Petitioner is a citizen of Syria who entered without inspection on June 4, 2024 and was encountered by United States Border Patrol ("U.S.B.P.") the following day. (Doc. 9 at 8). On November 26, 2024, Petitioner was ordered removed but granted withholding of removal as to Syria. (*Id.* at 13−16). Both parties waived appeal of that order and therefore it became final. (*Id.*

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only their first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

at 16). On January 14, 2025, the Department of Homeland Security ("DHS") filed a motion to reopen, which the immigration judge denied on April 4, 2025. (*Id.* at 9–10). On February 21, 2025, Petitioner was released on their own recognizance. (Doc. 1 at 26).

On February 12, 2026, Petitioner was redetained pursuant to a warrant of removal / deportation, which states that Petitioner "is subject to removal/deportation from the United States, based upon a final order by an immigration judge in exclusion, deportation, or removal proceedings." (Doc. 9 at 18). On that same date, Petitioner received a notice regarding the revocation of their release, which stated that Petitioner's "release has been revoked pursuant to 8 C.F.R. § 241.1(l)" on the basis that "[t]he purposes of release have been served." (Doc. 9 at 23).

Petitioner currently remains in custody.

On March 16, 2026, Petitioner sought their release though a writ of habeas corpus on four grounds: that their redetention (1) violates their due process rights under the Fifth Amendment; (2) is unlawful under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and 8 U.S.C. § 1231; (3) violates the Immigration and Nationality Act, and (4) violates the Administrative Procedure Act. (Doc. 1 at 6–16). On March 23, 2026, Respondents filed a motion to dismiss the Petition. (Doc. 9).

## II. DISCUSSION

### A. Jurisdiction

Before turning to the merits, the Court must first assure itself of jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 583 (1999). Courts have long had jurisdiction to issue writs of habeas corpus to petitioners held in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2241(c)(3). In doing so, courts carry out the "historic purpose of the writ," namely "to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533 U.S. at 699. But the Supreme Court has consistently "rejected" any suggestion that section 1252(g) covers all claims arising from deportation proceedings or imposes a general jurisdictional limitation. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Had Petitioner sought to challenge the Government's decision to execute their removal order, it would indeed bar this Court's review. But because, Petitioner's due process claim contests only his detention resulting from violations of the Government's mandatory duties under

certain statutes, regulations, and the Constitution, the undersigned finds that it has jurisdiction to determine the lawfulness of Petitioner's detention. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have limited [section 1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders.").

**B. Merits**

The undersigned will start and end its review with Petitioner's due process claim.

Petitioner contends that the Due Process Clause bars the government from re-detaining them without first providing a custody hearing where the government would bear the burden of proof to establish that Petitioner is a flight risk or danger to the community. (Doc. 1 at 12–13). Petitioner's due process claim is analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

1. <u>Petitioner Possesses a Protected Liberty Interest.</u>

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (holding that due process requires hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding the same as for probation); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (holding the same as for parole). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

marks and citation omitted).[2]

Petitioner's release on their own recognizance similarly allowed them to live in their community.

Respondents contend that they nonetheless had discretion to redetain Petitioner. (Doc. 9 at 3–6). But while immigration officials may have had discretion over the initial decision to detain or release Petitioner, their decision to release an individual from custody creates "an implicit promise" upon which an individual may rely: that his liberty "will be revoked only if [he] fails to live up to the . . . conditions [of release]." *Morrissey*, 408 U.S. at 482. As other courts have found in similar circumstances, "even when the government has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

The undersigned finds that Petitioner has a protected liberty interest in their release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The undersigned must therefore determine what process is due before the government may terminate Petitioner's liberty.

*2.* <u>Mathews Factors</u>

Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*

[2] In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

*Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Importantly, the *Mathews* factors do not invite the Court to consider the specific facts related to the Government's ultimate justifications for any deprivation of a protected liberty interest. Indeed, "a first principle of Anglo–American jurisprudence, basic to the conception of due process in the procedural sense, is that the ends do not justify the means." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013) (quotation modified) (quoting *Pillsbury Co. v. F.T.C.,* 354 F.2d 952, 964 (5th Cir. 1966)); *see also* WE THE JUDGES 354 (Doubleday 1956). Or, put another way, "[i]t is process that the procedural due process right protects, not the outcome." *Id.* Before the government is entitled to deprive a person of a protected liberty interest, the government must establish the right to so deprive a person of that interest through a process designed to protect *any* person with that liberty interest, regardless of the ultimate outcome of such a process.

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Second, "the risk of an erroneous deprivation [of liberty] is high" when, as here, Petitioner does not receive meaningful notice as to the reasons why they are being redetained. *See Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *2 (W.D. Wash. Dec. 3, 2025) ("The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty interest is high under the facts of this case unless the Government provides adequate notice of the reasons for his re-

detention and a meaningful opportunity to respond.”).

As relevant here, Respondents represent that Petitioner’s release was revoked pursuant to section 241.1(l)(2)(i), which provides for revocation of release where release may be revoked in an exercise of discretion, “where in the opinion of the revoking official . . . [t]he purposes of release have been served.” (*See* Doc. 9 at 23). Respondents further represent that they provided sufficient written notice to Petitioner on the day of Petitioner’s arrest. (*See* Doc. 9 at 5, 23–24). The undersigned disagrees.

Simply stating that the purposes of release have been served is conclusory and insufficient to put Petitioner on notice of the reasons for revocation in a way that would allow meaningful response. *See Saengphet v. Noem*, 815 F. Supp. 3d 1142, 1150 (S.D. Cal. 2025) (“the Government’s provision of such conclusory ‘reasons,’ is highly likely to result in Petitioner losing his challenge before it even begins.”); *cf. Phakeokoth v. Noem*, No. 3:25-CV-02817-RBM-SBC, 2025 WL 3124341, at *4 (S.D. Cal. Nov. 7, 2025) (“[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough.” (quoting *Sarail A. v. Bondi*, 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *10 (D. Minn. 2025)); *Quan v. Bowen*, No. 5:25-CV-02546-HDV-PVC, 2025 WL 3691858, at *6 (C.D. Cal. Nov. 14, 2025) (“Courts in this district, circuit, and across the country have held that such a vague, generic statement is insufficient notice.”). Here, the notice the government provided Petitioner provides no information as to the purposes of release or any circumstances giving rise to the satisfaction of any such purpose. *Cf. Phakeokoth*, 2025 WL 3124341, at *4. (“Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition.” (quoting *Sarail A.*, 2025 WL 2533673, at *10)). And insofar as the government’s revocation was to effectuate removal to a third-party country, Respondents fail to identify any steps they have taken to effectuate any such removal, let alone identify any possible third country where Petitioner might be removed. *See Popelzai v. Chestnut*, No. 1:26-CV-01618-DJC-CKD, 2026 WL 785854, at *2 (E.D. Cal. Mar. 20, 2026). Therefore, the undersigned finds that the conclusory notice offered by Respondents is insufficient to meet the requirements of due process.

Third, although the Government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a pre-deprivation hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). In Immigration Court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega*, 415 F. Supp. 3d at 970.

On balance, the *Mathews* factors show that Petitioner is entitled to a pre-deprivation bond hearing, which should have been provided before Petitioner was redetained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("[a]pplying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty"). The Supreme Court has held that due process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of release on their own recognizance. Moreover, in light of the substantial public interest at issue, this circuit requires the government to bear the burden of proving "by clear and convincing evidence that the [noncitizen] is a flight risk or danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011); *see Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (holding that the government properly bore burden by clear and convincing evidence in court-ordered bond hearing); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (ordering pre-deprivation bond hearing in which the Government bears burden by clear and convincing evidence).

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-*deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025

WL 1927596, at *5; *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *3–4 (N.D. Cal. July 4, 2025); *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The undersigned therefore finds that their redetention without a pre-deprivation hearing violated their due process rights.

## III. RECOMMENDATION

For the aforementioned reasons, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be GRANTED and Respondents be ORDERED TO IMMEDIATELY RELEASE Petitioner according to the conditions of supervision in existence immediately preceding Petitioner's redetention.

These Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within ten (10) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure,

should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **July 14, 2026**

Erin Sing Castillo

UNITED STATES MAGISTRATE JUDGE